IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

DAVID W. BOGGESS and
MELINDA BOGGESS,

      Plaintiffs,

v.                                          Civil Action No.:   5:21-cv-00620
                                                Judge:

POCAHONTAS COAL COMPANY, LLC,

      Defendant.

## COMPLAINT

Plaintiffs, David and Melinda Boggess, by counsel, hereby state and allege as follows for their Complaint against the Defendant:

**PARTIES, JURISDICTION and VENUE**

1. At all times relevant, plaintiffs David and Melinda Boggess, husband and wife, are residents and citizens of Camden-on-Gauley, Webster County, West Virginia.

2. Defendant Pocahontas Coal Company, LLC ("PCC") is a Tennessee limited liability company with its principal office in Johnson City, Tennessee, and with its local designated office in Beckley, Raleigh County, West Virginia. Defendant PCC is primarily engaged in the coal mining business, including the operation of the Affinity underground mine, operating under MSHA ID No. 46-08878. As such, defendant PCC is, and at all times relevant herein was, regulated by the United States Department of Labor Mine Safety and Health Administration ("MSHA"), as well as the West Virginia Office of Miners' Heath Safety & Training ("WVOMHST") and was responsible for compliance with all applicable MSHA and WVOMHST

rules and regulations, as well as commonly accepted and well-known safe mining practices used in the mining industry, in the operation of its Affinity Mine.

3. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1332 in that there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. Venue is proper before this Court pursuant to 28 U.S.C. §1931 and W. Va. Code §23-4-2(e) since the subject incident resulting in plaintiff David Boggess's serious injuries and damages occurred within the Southern District of West Virginia in Raleigh County, West Virginia.

**FACTS**

4. At all relevant times hereto, plaintiff David Boggess was employed by defendant PCC as a continuous miner operator at its Affinity Mine. At all times relevant hereto, defendant PCC was the operator of the Affinity Mine.

5. At all times relevant hereto, plaintiff David Boggess's immediate supervisor and section boss was Oscar Hughes. Mr. Hughes was a certified foreman, designated competent person, and member of mine management.

6. At the conclusion of each shift, plaintiff David Boggess and his section crew members, including section boss Oscar Hughes, would board and travel in a mantrip to the elevator to exit the mine.[1] Two (2) mantrips were utilized for the section crew members to travel in. The mantrips would travel along track rail. As of December 17, 2019, it was approximately a forty (40) minute ride from the working section to the mine elevator.

7. Federal and state mining regulations require that each mantrip be operated under the direction and charge of a supervisor, certified person or other competent person designated by

---

[1] This was also the same process when entering the mine. Plaintiff and his section crew members, including section boss, Oscar Hughes, would board a mantrip after getting off the elevator and travel to the section on track rail.

the mine operator, defendant PCC.  Federal and state mining regulations also require mantrips to be operated at safe speeds consistent with the condition of the road and equipment used not to exceed twelve (12) miles per hour, and the operator should be familiar with the haulage safety rules and regulations

8. It was common knowledge at the mine that one of the mantrip operators, "Tyler", operated the mantrip at high speeds in an unsafe manner.  This presented an unsafe working condition for those miners who rode in the mantrip with Tyler as they were exposed to a high degree of risk and a strong probability of serious injury or death.

9. Mine management, including section boss Oscar Hughes, were aware that Tyler operated the mantrip at high speeds and in an unsafe manner.  Mr. Hughes had warned Tyler multiple times prior to December 17, 2019, to slow down when operating the mantrip.  On and prior to December 17, 2019, the employees, including plaintiff David Boggess, who were passengers in the mantrip operated by Tyler, were at a high risk of being seriously injured or killed due to the known unsafe manner in which Tyler operated the mantrip.

10. On and prior to December 17, 2019, there was a "kink" in the track where the rail was bent along the route plaintiff and his section crew members traveled on a daily basis to and from the working section when entering and exiting the mine.  The "kink" in the track was located just inby the "Big Dip."

11. Federal and state mining regulations require the track where workers travel upon to be inspected and examined by a certified foreman.  Should a hazardous condition be found, such condition shall be posted and marked with a conspicuous danger sign until corrected and recorded in the examination books.  Federal and state mining regulations further require the rails and other elements of all haulage roads to be constructed, installed, and maintained in a manner consistent

with speed and type of haulage operations being conducted to ensure safe operation. The "kink" and/or bent track rail in this area presented a danger and risk of serious injury to the miners who travelled through this area on rail equipment. It created an unsafe working condition where it may cause such rail equipment to de-rail, jar, or move erratically when passing through this area.

12. Defendant PCC and mine management were aware of the unsafe condition of the track rail in this area of the mine yet failed to correct the condition or mark and/or post this area with a conspicuous danger sign. This kink in the track had existed for several months prior to December 17, 2019.

13. Defendant, through members of mine management, including section boss Oscar Hughes, were fully aware of these specific unsafe working conditions, yet continued to expose workers, including plaintiff David Boggess, to a high degree of risk and a strong probability of serious injury or death in direct violation of federal and state mine safety regulations.

14. On December 17, 2019, at the conclusion of his shift, plaintiff David Boggess boarded one of the mantrips to travel to the elevator to exit the mine. Despite mine management knowing of the tendencies and unsafe behavior of Tyler as it pertained to the operation of a mantrip, and the mandatory requirement that all mantrips be operated under the supervision and authority of an agent of the operator, Tyler was instructed to operate the subject mantip on which the plaintiff was riding. Section boss Oscar Hughes also boarded the same mantrip and served as the designated certified person, competent person and/or supervisor directing and in charge of the subject mantrip. Consistent with his prior practices and behavior, Tyler operated the subject mantrip at a high rate of speed and in an unsafe manner. Section boss Oscar Hughes was present in the mantrip and directly observed and experienced Tyler operating the mantrip in an unsafe manner, and despite being in charge of its operation, chose not to direct Tyler to slow down or stop

the mantrip exposing the other employees riding in the mantrip, including plaintiff David Boggess, to a high degree of risk and a strong probability of serious injury or death.

15. As Tyler approached the area with the known "kink" in the track, he did not slow down. Tyler proceeded through this area at a high rate of speed causing the mantrip to violently and erratically jerk when it hit the kink. As a result, plaintiff David Boggess was thrown forward and then backwards, slamming his back against the seat, as his head and neck propelled over the seat back.

16. As a result of defendant intentionally exposing plaintiff David Boggess to known specific unsafe working conditions in violation of mandatory mine safety statutes, rules and regulations, plaintiff David Boggess suffered multiple serious, permanent, and disabling injuries to his cervical spine, right shoulder, right arm and back resulting in having to undergo an anterior cervical discectomy and fusion at C4 – C5 and C5 – C6.

17. Following the incident, plaintiff David Boggess was assisted out of the mine and help complete an incident report for the mine safety department while still at the mine.

18. While plaintiff David Boggess did not immediately seek medical treatment and attempted to work for a period of time following this incident, he eventually sought medical treatment and was taken off work permanently and has not returned to work since stopping work as a direct and proximate result of injuries sustained in the December 17, 2019 incident.

19. Federal mine law 30 C.F.R. §50.20 requires defendant PCC, as the mine operator, to report an occupational injury within ten (10) working days after it occurs or an employee seeks medical treatment. 30 C.F.R. §50.2(e) defines "occupational injury" as "any injury to a miner which occurs at a mine for which medical treatment is administered, or which results in … inability

to perform all job duties on any day after an injury, temporary assignment to other duties, or transfer to another job."

20. Pursuant to mandatory mine safety laws, the absolute latest defendant PCC could have lawfully reported plaintiff's occupational injury to mine regulatory bodies was ten (10) working days following the date plaintiff first sought medical treatment. Despite these mandatory requirements, upon information and belief, defendant PCC deliberately and intentionally failed to report plaintiff's injury and incident to state and federal mine regulatory bodies.

21. Defendant PCC's intentional, deliberate, and reckless actions in failing to report the subject incident to mine regulatory bodies pursuant deprived plaintiffs, MSHA and the WVOMHST the opportunity to investigate this serious incident, conduct interviews, determine its cause, issue citations and/or notices of violation, and order or recommend appropriate corrective action for the health and safety of the miners.

22. Defendant deliberately, intentionally, and recklessly allowed critical evidence to be destroyed that would have contributed to the investigation and determination of the cause of the incident.

23. As a direct and proximate result of the actions, omissions, and conduct of the defendant, on and before December 17, 2019, plaintiff David Boggess sustained serious and permanently disabling injuries, and he has further sustained the following past and future damages:

    a.    extreme physical pain and suffering;

    b.    extreme mental anguish and suffering;

    c.    permanent physical impairment;

    d.    loss of wages and benefits;

    e.    loss of future earning capacity and benefits;

    f.    loss of capacity to enjoy life;

    g.    medical expenses past and future;

    h.    permanent scarring and disfigurement; and

    i.    annoyance and inconvenience.

## COUNT I
### DELIBERATE INTENT - W. VA. CODE § 23-4-2(d)(2)(B)

24. The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 23 of this Complaint as if set forth herein verbatim.

25. On and prior to December 17, 2019, defendant PCC violated W. Va. Code § 23-4-2(d)(2)(B), in that:

    I.    A specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

    II.    Defendant PCC, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition(s) and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition(s);

    III.    That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of defendant PCC;

    IV.    That notwithstanding the existence of the facts set forth in subparagraphs (I) through (III), inclusive, of this paragraph, Defendant PCC, through its management and plaintiff's supervisors, nevertheless intentionally thereafter exposed plaintiff David Boggess to the specific unsafe working condition(s); and

    V.    That David Boggess suffered serious compensable injury as defined in section one, article four, chapter twenty-three as a direct and proximate result of the specific unsafe working condition(s).

26. As of the filing of this Complaint, plaintiff David Boggess has been awarded 25% whole person impairment, and pursuant to West Virginia workers' compensation statutes and

regulations, that amount cannot by reduced. Therefore, as to the requirement that the plaintiff's injury have a final award of at least 13% total whole person impairment, plaintiff has met that requirement.

27. As a direct and proximate result of defendant PCC's actions and omissions, on and prior to December 17, 2019, the plaintiff, David Boggess, sustained severe and permanent injuries and damages described herein.

28. In support of the plaintiff's allegations as to the existence of specific unsafe working conditions, violations of relevant safety statutes, rules, regulations, and industry safety standards as a contributing cause of plaintiff's injuries, plaintiff attaches as **Exhibit A**, the verified statement of mine safety expert, Don Ellis., pursuant to W. Va. Code 23-4-2(d)(2)(C)(i).

## COUNT II
## LOSS OF CONSORTIUM

29. Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 28 of this Complaint as if set forth herein verbatim.

30. As a further direct and proximate result of the conduct and actions of the defendant as described herein, the plaintiff Melinda Boggess, has been deprived of the loss of society, companionship, and consortium of her husband, David Boggess.

WHEREFORE, the plaintiffs, David and Melinda Boggess, demand judgment against the defendant, Pocahontas Coal Company, LLC, for:

a.) an amount of compensatory damages determined by a jury according to the laws of the State of West Virginia;

b.) an adverse inference instruction related to defendant's failure to report the subject incident to federal and state mine regulatory bodies and spoliation of critical relevant evidence;

  c.)  costs and attorney fees expended in prosecution of this matter;

  d.)  pre-judgment and post-judgment interest as provided under the law; and

  e.)  any and all other relief to which the Court deems plaintiffs are entitled.

**PLAINTIFFS DEMAND A JURY TRIAL.**

                   **DAVID W. BOGGESS and**
                   **MELINDA BOGGESS**

                   By Counsel,

*/s/ D. Blake Carter, Jr.*
D. Blake Carter, Jr. (WVSB #9970)
J. Ryan Stewart (WVSB #10796)
BAILEY JAVINS & CARTER, LC.
213 Hale Street
Charleston, West Virginia 25301
Phone: (304) 345-0346
Fax: (304) 345-0375
jrcarter@bjc4u.com
rstewart@bjc4u.com

**Counsel for Plaintiff**